**SO ORDERED.**

**SIGNED this 26 day of November, 2014.**

_____
**David M. Warren**
**United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
### RALEIGH DIVISION

IN RE:                                                                                     CASE NO. 14-05336-5-DMW

MARY STEVENSON KEEF
                                                                                                 CHAPTER 13
            DEBTOR

## MEMORANDUM OPINION

This matter comes on to be heard upon the Motions for Relief from the Automatic Stay ("Motions") filed by Velvet Cloak Villas Condominium Homeowners Association, Inc. ("COA") and Progress Park Limited Partnership ("Progress Park"), and the response filed by Mary Stevenson Keef ("Debtor").  The court conducted a hearing in Raleigh, North Carolina on October 28, 2014.  Nelson G. Harris, Esq. appeared on behalf of the COA, Kevin L. Sink, Esq. appeared on behalf of Progress Park, and Neubia L. Williams, Esq. appeared on behalf of the Debtor.  The court entered an Amended Order modifying the automatic stay on November 4, 2014.  This Memorandum Opinion supplements that Amended Order.  Based upon the evidence presented and the arguments of counsel, the court makes the following findings of fact and conclusions of law:

A.  BACKGROUND

1. The Debtor filed a petition for relief under Chapter 13 of the United States Bankruptcy Code on September 15, 2014 ("Petition Date"). John F. Logan, Esq. was appointed as trustee to fulfill the duties as provided in 11 U.S.C. § 1302.

2. The Debtor owns two condominium units, described as units G25 and G27 ("Units") at the Velvet Cloak Condominiums ("Velvet Cloak"). The Velvet Cloak formerly operated as one of the premier hotels in Raleigh during the latter half of the 20th century. Over the years, the Velvet Cloak's business gradually declined.

3. In 2005 Progress Park purchased the Velvet Cloak with the intent to convert the hotel into individually owned condominium units. On October 28, 2005, Progress Park recorded in Book 11658, Page 1537, Wake County Registry, a "Declaration of Condominium Under the Provision of Chapter 47C of the General Statutes of North Carolina and Covenants, Conditions and Restrictions for Velvet Cloak Villas Condominiums" ("Declaration").

4. Progress Park proceeded to market the Velvet Cloak as condominiums. The COA is the condominium association formed in accordance with the provisions of the Declaration (as amended) and the North Carolina Condominium Act, N.C. Gen. Stat. 47C-1-101 *et seq*. ("Condominium Act").

5. On April 16, 2010, the Debtor purchased the Units from Progress Park, and executed a Promissory Note ("Promissory Note") secured by a Purchase Money Deed of Trust ("DOT") in the amount of $116,490.00 in favor of Progress Park. The DOT was recorded in Book 13912, Page 825, Wake County Registry, on April 19, 2010.

6. The marketing of the Velvet Cloak as condominiums was unsuccessful due in part to the poor real estate market and extensive damage caused by a powerful lighting strike.

2

7. On December 30, 2013, Progress Park, Units 570 and 592, David Smoot, and Daniel Smoot (collectively "Majority Owners"), purporting to be the owners of more than 80% of the Velvet Cloak units with corresponding voting rights, recorded in Book 15545, Page 2193, Wake County Registry, a Plan of Termination of Condominium and Agreement ("Termination Plan").  The Majority Owners assert that they terminated the Declaration effective December 30, 2013.  The Debtor disagrees.

8. Pursuant to the Termination Plan, the COA listed the Velvet Cloak for sale through the Triangle Commercial Association of Realtors.  Upon a sale of the Velvet Cloak, the Termination Plan provides for the COA to distribute the net proceeds in accordance with the provisions of the Condominium Act.  That distribution requires each unit owner to receive a *pro rata* share based upon the value of the unit(s) compared to the aggregate value of the units as a whole.

9. On January 31, 2014, the Debtor and other unit owners commenced a civil action identified as *Irwin Stern, et al. v. David M. Smoot, et al.*, in the Wake County Superior Court, File No. 14 CVS 1349 ("Civil Action") alleging that the COA was improperly formed, and the Declaration was void.  The plaintiffs in the Civil Action further allege that the Majority Owners owned less than the required 80% of the units and are seeking a determination that the purported termination is void.

10. After the filing of the Civil Action, the COA entered into a contract with a third party to sell the Velvet Cloak for $6,985,000.00.  A condition of the closing is that the Civil Action must be resolved prior to January 15, 2015.  The Wake County Superior Court has set a trial date beginning December 1, 2014.

11. In May, 2014, the Debtor defaulted under the Promissory Note to Progress Park.

12. On June 2, 2014, Progress Park began a foreclosure proceeding under its DOT in Wake County, North Carolina, File No. 14 SP 1749 ("Foreclosure Action").

13. On August 9, 2014, the Wake County Clerk of Court entered an Order in the Foreclosure Action allowing the substitute trustee to sell the Units. The Debtor appealed that Order to the Wake County Superior Court where the Clerk's Order was reviewed *de novo* and affirmed. The Debtor took no further appeal.

14. On August 11, 2014, the substitute trustee filed a Notice of Sale in the Foreclosure Proceeding, setting the sale for September 3, 2014.

15. On September 3, 2014, the substitute trustee sold the Units and filed a Report of Foreclosure Sale. That Report of Foreclosure Sale set September 15, 2014 as the last date for upset bids.

16. The Debtor testified at the hearing that she is the named lessee of an apartment located at 1003 Lorimer Road in Raleigh, North Carolina. Two individuals currently live in the apartment, but the Debtor testified that she has the ability to live there if she needs to.

17. The Debtor filed her petition on September 15, 2014, staying the Foreclosure Action pursuant to 11 U.S.C. § 362.

18. Progress Park offered testimony on the value of the Units through Frank Leatherman, appraiser for Progress Park. That testimony provided that as of December 30, 2013, the value of the Velvet Cloak as a condominium complex was $3,285,000.00.

19. Based on that appraisal and pursuant to the Termination Plan, the aggregate *pro rata* value of the Debtor's Units is between $40,000.00 and $56,000.00. At the time of the Debtor's default, the outstanding balanced owed under the Promissory Note was $111,003.88.

20. The COA and Progress Park seek relief from the automatic stay in order to proceed with the pending Civil Action, and Progress Park seeks relief from the automatic stay under 11 U.S.C. § 362(d) to complete the Foreclosure Action.

B. JURISDICTION

1. This matter is a core proceeding pursuant to 28 U.S.C. § 157, and the court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157, and 1334.

2. The court has the authority to hear this matter pursuant to the General Order of Reference entered August 3, 1984 by the United States District Court for the Eastern District of North Carolina.

C. DISCUSSION

1. Cause

a. Under 11 U.S.C. § 362(d)(1) the court may grant relief from the stay by terminating, annulling, modifying, or conditioning such stay for cause, including the adequate protection of an interest in property of a party in interest.

b. To determine if there is cause to lift the automatic stay, the court balances the potential prejudice to the debtor's estate against the hardship that will be incurred by the party seeking relief from the automatic stay if relief is denied. *In re Robbins*, 964 F.2d 342, 345 (4th Cir. 1992).

c. The Civil Action cannot proceed unless the automatic stay is modified. The Debtor and her co-plaintiffs filed the Civil Action several months before the Debtor filed this bankruptcy case. The Wake County Superior Court is ready to conduct the trial. The Civil Action was not removed to this court, and even if it were, it is unlikely that this

court would have jurisdiction. Preventing the Civil Action from proceeding would be an unnecessary delay of the adjudication of the rights of the parties.

        d.      Weighing in favor of the modification of the stay is the pending contract for sale. The contract sales price of $6,985,000.00 far exceeds the appraised value according to the testimony given by Mr. Leatherman. A condition precedent to the closing of that sale is the adjudication of the Civil Action. While the defendants may be unsuccessful in defending the Civil Action, the parties should be given every opportunity to determine their rights in a timely fashion, and maintaining the automatic stay would prevent that occurrence. Cause exists to grant the Motions pursuant to 11 U.S.C. § 362(d)(1).

2.     <u>Insufficient Equity and Not Necessary for Reorganization</u>

        a.      Under 11 U.S.C. § 362(d)(2), the court may grant relief to a creditor by terminating, annulling, modifying, or conditioning the stay with respect to an act against property of the estate, if the debtor does not have equity in the property and the property is not necessary to an effective reorganization.

        b.      The Debtor has no equity in the Units. The balance owed under the Promissory Note to Progress Park is almost twice the value of her pro rata interest based upon Mr. Leatherman's appraisal.

        c.      The Debtor testified that she has another place available to her to live. The Units are not necessary for any potential reorganization. Progress Park has met its burden under § 362(d)(2); now therefore;

It is ORDERED, ADJUDGED and DECREED as follows:

1. The Motions are granted as previously stated in the Order entered November 4, 2014; and

2. Consistent with the November 4, 2014 Order, in the event this case is voluntarily dismissed by the Debtor, the Debtor is prohibited from filing a subsequent bankruptcy petition under any chapter of the United States Bankruptcy Code in any district for a period of 90 days from the date of the voluntary dismissal.

END OF DOCUMENT